# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMEKO MALONE, | CASE NO. 1:06-cv-00199 OWW DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION |
| v. | FOR SUMMARY JUDGMENT BE GRANTED |
| PETERSON, | (Doc. 24) |
| Defendant. | |

**Defendant's Motion for Summary Judgment**

**I.    Procedural History**

Plaintiff Tomeko Malone ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed February 22, 2006, against defendant Peterson ("defendant") for use of excessive force, in violation of the Eighth Amendment. (Doc. 1.) On February 11, 2008, defendant filed a motion for summary judgment. (Doc. 24.) After obtaining an extension of time, plaintiff filed an opposition on June 2, 2008, and defendant filed his reply on June 11, 2008 (Docs. 46-51).

**II.   Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
2 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
3 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
4 amendments).

5     In resolving the summary judgment motion, the court examines the pleadings, depositions,
6 answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ.
7 P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all
8 reasonable inferences that may be drawn from the facts placed before the court must be drawn in
9 favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369
10 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is
11 the opposing party's obligation to produce a factual predicate from which the inference may be
12 drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810
13 F.2d 898, 902 (9th Cir. 1987).

14     Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
15 that there is some metaphysical doubt as to the material facts. Where the record taken as a whole
16 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
17 trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

18 **III.  Undisputed Facts**
19 1.  At all times relevant to this action, plaintiff was in the custody of the California Department
20     of Corrections and Rehabilitation ("C.D.C.R.") as a prisoner at California Correctional
21     Institution ("C.C.I.").
22 2.  At all times relevant to this action, defendant was employed by the C.D.C.R. as a
23     Correctional Officer at C.C.I.
24 3.  On March 17, 2005, plaintiff was being held in the Administrative Segregation Unit
25     ("A.S.U.") of C.C.I.
26 4.  On March 17, 2005, defendant was working as a legal officer in the A.S.U.
27 5.  In A.S.U., each inmate is housed in a separate cell, usually with a cellmate, which is
28     surrounded by three solid walls, and a door with a window and a food port.

6. The food port is located in each door and consists of a slot with a hinged front panel and lock on the outside.

7. When an A.S.U. inmate was escorted somewhere, delivered property in his cell, or if an inmate's cell is to be searched, the same procedure is used.

8. The procedure for escorting an A.S.U. inmate, delivering property in his cell, or searching his cell is: (1) a floor officer unlocks the food port; (2) the inmate is instructed to turn around, facing backwards, and place his hands in the food port; (3) a floor officer places handcuffs on the inmate's hands; (4) the inmate is instructed to walk to the back of his cell and remain facing backwards; (5) a floor officer signals to the control booth to unlock the cell; and (6) the inmate is instructed to walk backwards toward the floor officer.

9. On March 17, 2005, Defendant and correctional officer Agcaoili arrived at Plaintiff's cell to deliver his legal property.[1]

10. When defendant and Officer Agcaoili arrived at plaintiff's cell, defendant complied with A.S.U.'s procedure for delivery of property in a cell.

11. As Plaintiff exited his cell, he began to turn around.

12. As Plaintiff turned around, Defendant pushed him on his upper left shoulder.

13. Immediately following the incident with Defendant, Malone requested medical attention.

14. On March 29, 2005, Plaintiff was examined and diagnosed with recurring pain in his left shoulder associated with past left shoulder surgery.

15. During the March 29, 2005 exam, no objective physical symptoms, associated with a traumatic injury, were noted.

16. On April 5, 2005, an x-ray of Plaintiff's left shoulder revealed severe degenerative joint disease changes.

---

[1] In his Statement of Disputed Facts and his "Opposition to Declaration of T. Peterson in Support of Defendants Motion for Summary Judgment", plaintiff attacks defendant's credibility by attempting to point out inconsistencies between defendant's answers to interrogatories and her declaration in support of the instant motion. (Docs. 49, 47). First, it is immaterial to this motion whether defendant arrived at plaintiff's cell to deliver his legal property or to escort him to the law library, since the procedure for either situation is the same. (See Undisputed Fact 8). Second, plaintiff must do more than attack the credibility of defendant's evidence. See National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert . . . judgment.").

4

**IV.     Eighth Amendment Excessive Force Claim**

In his verified complaint, plaintiff alleges that on March 17, 2005, defendant used excessive force against him, in violation of the Eighth Amendment. Plaintiff alleges that his left shoulder was re-injured, and that he suffers from mental and emotional injuries. Plaintiff seeks money damages.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id at 9-10. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Id at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

On March 17, 2005, plaintiff was being held in the A.S.U. of CCI, and defendant was working as a legal officer in the A.S.U. (Undisputed Facts 3, 4). In A.S.U., each inmate is housed in a separate cell, usually with a cellmate, which is surrounded by three solid walls, and a door with

a window and a food port. (U.F.5) The food port is located in each door and consists of a slot with a hinged front panel and lock on the outside (U.F. 6). When an A.S.U. inmate was escorted somewhere, delivered property in his cell, or if an inmate's cell is to be searched, the same procedure is used. (U.F. 7). The procedure for escorting an A.S.U. inmate, delivering property in his cell, or searching his cell is: (1) a floor officer unlocks the food port; (2) the inmate is instructed to turn around, facing backwards, and place his hands in the food port; (3) a floor officer places handcuffs on the inmate's hands; (4) the inmate is instructed to walk to the back of his cell and remain facing backwards; (5) a floor officer signals to the control booth to unlock the cell; and (6) the inmate is instructed to walk backwards toward the floor officer. (U.F. 8). On March 17, 2005, Defendant and correctional officer Agcaoili arrived at Plaintiff's cell to deliver his legal property (U.F.9). As Plaintiff exited his cell, he began to turn around. (U.F. 11). As Plaintiff turned around, defendant pushed him on his upper left shoulder. (U.F. 12). Immediately following the incident with Defendant, Malone requested medical attention. (U.F.13)

On March 29, 2005, Plaintiff was examined and diagnosed with recurring pain in his left shoulder associated with past left shoulder surgery.(U.F.14) During the March 29, 2005 exam, no objective physical symptoms, associated with a traumatic injury, were noted. On April 5, 2005, an x-ray of Plaintiff's left shoulder revealed severe degenerative joint disease changes. (U.F.15, 16) Defendant contends that degenerative joint disease is a degeneration of the articular (joint surface) cartilage usually accompanied by an overgrowth of bone (osteophytes), narrowing of joint space, sclerosis or hardening of bone at the joint surface, and deformity in joints. (Doc. 24, Williams Decl, ¶7) Degeneration occurs over a long time and is associated with repetitive activities or a past injury, and not as a result of any recent traumatic event. (Id). Given that Plaintiff sustained a past injury to his left shoulder, before March 17, 2005, and the March 29, 2005 examination did not note any objective physical symptoms associated with a traumatic injury, defendant contends that the severe degenerative joint disease changes in Plaintiff's left shoulder are attributable to his past shoulder surgery, not to a traumatic injury on March 17, 2005. (Id. at ¶8)

Defendant argues that she is entitled to summary judgment because the facts demonstrate that plaintiff suffered only a de minimis injury. (Doc. 24, p.6:26-28). Defendant argues that plaintiff

1  must demonstrate an objectively serious deprivation or injury, and that only "extreme deprivations"
2  rise to the level of an Eighth Amendment violation. (Id., p.4-5).
3       In Hudson, the Supreme Court specifically states that in the excessive force context, the focus
4  is on the whether the force was applied in a good faith effort to maintain and restore discipline, or
5  maliciously and sadistically to cause harm. "The absence of serious injury is...relevant to the Eighth
6  Amendment inquiry, but does not end it." Id at 7. As the Court explains,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

10       Defendant relies on two cases, Johnson v. Moody, 2006 U.S. App. LEXIS 26988 (11th Cir
11  2006) and Romano v. Alameda County Sheriff's Dep't, 1998 U.S. Dist. LEXIS 3714 (N.D.Cal.
12  1998), to demonstrate that plaintiff's injuries in the present action are de minimis. Both cases
13  involve allegations of excessive force by prison/jail officials. In both cases, the respective courts
14  found that the plaintiffs had suffered only de minimis injuries, and summary judgment was
15  ultimately granted/upheld in defendants' favor. While defendant in the present case may argue that
16  plaintiff's injuries are also de minimis, such a determination, alone, is not dispositive of an excessive
17  force claim. In both cases cited by defendant, those courts held that there was no showing that
18  defendants acted maliciously or sadistically to cause harm. (Johnson, at 884, Romano at 11).
19  Defendants in those cases were not entitled to summary judgment simply because the injuries
20  sustained by the plaintiffs were de minimis.
21       However, defendant next argues that she has never pushed an inmate out of anger, malice,
22  or for any improper purpose. (Doc. 24, p.7; Peterson Decl, ¶9). Defendant states that when she has
23  pushed an inmate, it was solely for the purpose of either subduing a violent inmate or preventing an
24  inmate from becoming violent toward a correctional officer or other inmates. (Id, ¶10).
25       In his verified complaint, plaintiff attests that defendant pushed and shoved him into his cell
26  while he was handcuffed, causing plaintiff to hit his head on the edge of the bunk. (Doc. 1, Comp).
27  In his deposition testimony, plaintiff explains that he had his back turned, and was walking
28  backwards towards the cell door. As he turned to proceed forward towards the other correctional

officer, defendant pushed him back into the cell. Plaintiff states that defendant informed him that he needed to "come back out some other way". (Doc. 24, Malone Depo., pp.14, 24, 39). For the purposes of this summary judgment motion, it is undisputed that defendant pushed plaintiff on his upper left shoulder. (U.F.12). Once plaintiff came out of his cell the second time, defendant placed plaintiff's property into his cell. (Doc 24, Malone Depo, p.14). Plaintiff asserts that the use of force by defendant was without justification. (Doc. 50, p.8).

Assuming the truth of plaintiff's allegations that he did not attempt to become violent and was following instructions as told, and physical force was used against him during his removal from his cell, in order to violate the Eighth Amendment, the force allegedly employed must be malicious and sadistic, not merely objectively unreasonable. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). As such, Plaintiff is required to submit some evidence to support of his claim that the force used against him was excessive and that Defendant acted sadistically and maliciously toward him. The event as described by plaintiff does not rise to the level of sadistic and malicious conduct. Plaintiff was previously notified of the requirements of opposing a motion for summary judgment. (Doc. 10.) Defendant is entitled to summary adjudication on the claim against her.

**V.   Qualified Immunity**

Based on the court's finding that defendant is entitled to summary judgment, the court does not reach defendant's other argument for qualified immunity.

**VI.   Conclusion**

Based on the foregoing, the court HEREBY RECOMMENDS that

1. Defendant's motion for summary judgment be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15)

///
///
///
///

days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 12, 2008**         /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE